UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NICOLE RENEE CROSBY,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>BENCIT LAW, MAGISTRATE JUDGE ROBINSON, SHAWN GOUGH, and NORTH CANYON HOSPITAL,<br><br>　　　　Defendants. | Case No. 1:24-cv-00472-BLW<br><br>**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE** |

Plaintiff Nicole Crosby ("Plaintiff") brings claims challenging her involuntary civil hospitalization that occurred in 2024. For the following reasons, Plaintiff may not proceed, but may file a second amended complaint or notice of voluntary dismissal.

## BACKGROUND

### 1. Unresolved Filing Fee and in Forma Pauperis Issues

The Court earlier ordered Plaintiff to file an in forma pauperis application. Instead, she sent only a copy of a Social Security Administration letter showing she receives about $661.00 per month in benefits. Dkt. 10. She does not state what her living expenses are, or whether she receives other income. She will still need to complete and submit an in forma pauperis application if she desires to proceed.

**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 1**

2.  **State Court Guardianship/Conservatorship History**

The Idaho Supreme Court Register of Actions from Case No.CV-24-24-00508, *In the Matter of the Guardianship and Conservatorship of: Nicole Crosby*, shows that in June 2024, Nicole Crosby's father, Loyal Crosby, retained Attorney Bren Erik Mollerup (of Benoit, Alexander, Mollerup & Danielson, PLLC, in Twin Falls, Idaho) (together referred to as "Benoit Law") to file a petition for guardianship of an adult to gain guardianship of Plaintiff ("guardianship petition"). *See* Exhibit 1 to this Order. In August 2024, Gooding County District Court Judge Rosemary Emory entered an order appointing an emergency guardian and emergency conservator for Plaintiff. In September, Plaintiff filed a notice of appeal in the guardianship action. In October, Plaintiff filed a "complaint" against Loyal Crosby, Benoit Law, Intermountain Hospital, Dr. Hurst in the guardianship action. On December 31, 2024, Magistrate Judge Casey Robinson held a hearing on Plaintiff's motion to dismiss the guardianship. On January 10, 2025, Judge Robinson entered an order dismissing the guardianship and a judgment of dismissal with prejudice. *See id*.

3.  **Allegations in this Federal Action**

In this action filed on October 23, 2024, Plaintiff filed a pro se civil Amended Complaint rights action against "Bencit Law" (correct spelling "Benoit" Law), Magistrate Judge Robinson; Gooding County Sheriff Shawn Gough; and North Canyon Hospital, located in Gooding, Idaho. Dkt. 1. On October 25, 2024, Plaintiff filed a Supplemental Complaint, naming Gooding County Courts as Defendant, but stating no facts supporting a claim.

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 2

Plaintiff alleges that Benoit Law jeopardized her life and failed to protect her father. The remainder of her allegations against this Defendant are illegible.

Plaintiff alleges that Magistrate Judge Robinson tried to force her father to sign a mental health hold document that permitted Plaintiff to be taken into custody and placed in a mental health institution, and that Judge Robinson issued a "faulty" warrant. She alleges that, on August 29, 2024, Sheriff Shaun Gough of Gooding County had the faulty warrant executed, causing her to be arrested and taken to North Canyon Medical Center. (Plaintiff also asserts that, at an unknown time prior to the arrest, Gough had stolen money from her, harmed her, and harmed her father physically.)

Plaintiff alleges that Gooding County law enforcement officers arrested her and transported her to North Canyon Hospital, where she was received into the emergency room on August 29, 2024, even though she did not have a history of mental illness, had no mental illness diagnosis, and was not taking any psychotropic medications. She was given an injection that "knocked [her] out" and then transported to Intermountain Hospital (no location specified).

In her Supplement, Plaintiff asserts that the "Gooding County Courts" violated her civil rights. There are no facts supporting this vague allegation. Dkt. 7.

**REVIEW OF COMPLAINT**

1. **Standards of Law**

The Court must review complaints filed by paupers seeking relief against state actors to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915. The Court liberally construes the pleadings to determine whether a case should be dismissed.

**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 3**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Under Rule 8 and 28 U.S.C. § 1915, the Court may dismiss some or all of the claims in an in forma pauperis complaint[1] for any of the following reasons:

- "insufficient facts under a cognizable legal" theory, *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984), meaning that the factual assertions, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

- "lack of a cognizable legal theory," *Robertson*, 749 F.2d at 534, including that the complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B), or the Court applies a procedural bar sua sponte (on its own), *see, e.g.*, *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024) (affirming dismissal based on *Heck v. Humphrey*, 512 U.S. 477 (1994));

- frivolousness or maliciousness, 28 U.S.C. § 1915(e)(2)(B); or

- seeking monetary relief from a defendant who is immune from such relief. *Id.*

"For the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty, and in consequence requires due process protection." *Vitek v. Jones*, 445 U.S. 480, 4912 (1980) (internal punctuation, alteration, and citation omitted). The United States Supreme Court has held that, to support a *long-term* involuntary commitment, the state must prove both mental illness and dangerousness by more than a

---

[1] Plaintiff has not paid the fee or applied for in forma pauperis status.

**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 4**

preponderance of the evidence, but not beyond a reasonable doubt. *Addington v. Texas,* 441 U.S. 418, 432–33 (1979). In the context of a short-term *nonemergency* hold, the state must prove mental illness and imminent dangerousness beyond a mere preponderance of the evidence. *Suzuki v. Yuen,* 617 F.2d 173, 178 (9th Cir. 1980).

In the context of a *short-term emergency* hold, by definition there is no prior adjudication of the detainee's condition, because the very purpose of the hold is to *evaluate whether* the person is mentally ill and dangerous and should be subjected to a long-term hospitalization. The question then becomes what degree of certainty a doctor must possess that an individual is both mentally ill and dangerous before the doctor may order or continue a short-term emergency involuntary commitment.

The Second Circuit faced the short-term emergency question in *Rodriguez v. City of New York*, 72 F.3d 1051 (2d Cir. 1995). The *Rodriguez* court held that due process does not require certainty on the part of the doctor who authorized the placement, and that the clear-and-convincing standard of proof does not apply to the decision whether to order an involuntary, short-term emergency commitment. *Id*. at 1062. The court ultimately decided that "due process ... does demand that the decision to order an involuntary emergency commitment be made in accordance with a standard that promises some reasonable degree of accuracy." *Id.* The court held that, although "committing physicians are not expected to be omniscient," due process "requires that their judgment—affecting whether an individual is to be summarily deprived of her liberty— be exercised on the basis of *substantive and procedural criteria that are not substantially below the standards generally accepted in the medical community*." *Id.* at 1063 (emphasis

**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 5**

added). The Ninth Circuit adopted the reasoning from *Rodriguez* in *Jensen v. Lane County*, 312 F.3d 1145, 1147–48 (9th Cir. 2002).

As to law enforcement officers who took Plaintiff into custody, they are not authorized to serve a warrant that they know is facially defective. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). If a warrant appears defective on its face, then any search and seizure based upon it cannot be reasonable. *Id*. at 557-58.

As to the particular context of Plaintiff's case— an emergency mental health seizure—the Ninth Circuit has commented: "Although there are few decisions that discuss the fourth amendment standard in the context of seizure of the mentally ill, all have recognized the proposition that such a seizure is analogous to a criminal arrest and must therefore be supported by probable cause. *Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991) (citations omitted), *as amended on denial of reh'g* (Apr. 1, 1992). As to the officers' request for qualified immunity in *Maag*, the Court determined: "we find that the officers had probable cause to take Maag into protective custody, based on the Montana statute, the information from family members and friends, the officers' own observations, and Dr. Bell's recommendation that Maag be brought to the hospital. There is nothing in the record to indicate that the officers acted with less than reasonable good faith." *Id*. at 776. This listing of information that supported Maag's protective custody placement informs Plaintiff about the kinds of information that support a finding of probable cause in an emergency mental health seizure setting. Plaintiff may file a second amended complaint if she has additional facts supporting liability.

**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 6**

### 2. Benoit Law

To state a claim under the civil rights statute, a plaintiff must allege a violation of rights protected by the Constitution statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991); 42 U.S.C. § 1983.

Here, Plaintiff has not shown that Benoit Law is a state actor, meaning a *person or entity acting on behalf of the state*. Section 1983 supports a claim only when the alleged injury is caused by "state action." *Jensen v. Lane Cnty.*, 222 F.3d 570, 575 (9th Cir. 2000) ("*Jensen I*").[2] However, if a private actor jointly acts to aid the state or county in

---

[2] In *Jensen I*, the Court held that Dr. Robbins, the doctor who evaluated and approved Jensen for a temporary mental health involuntary commitment, was a state actor based on his history of similar service to the county:

> The record is clear that Dr. Robbins and the County through its employees have undertaken a complex and deeply intertwined process of evaluating and detaining individuals who are believed to be mentally ill and a danger to themselves or others. County employees initiate the evaluation process, there is significant consultation with and among the various mental health professionals (including both P[sychiatric]A[ssociates] psychiatrists [for whom Dr. Robbins works] and county crisis workers), and PA helps to develop and maintain the mental health policies of LCPH [Lane County Psychiatric Hospital]. We are convinced that the state has so deeply insinuated itself into this process that there is "a sufficiently close nexus between the State and the challenged action of the [defendant] so that the action of the latter may be fairly treated as that of the State itself." *Jackson,* 419 U.S. at 350, 95 S.Ct. 449.

222 F.3d at 575 (bracketed information added for clarity).

However, on appeal after remand, the Ninth Circuit Court later affirmed the district court's decision that "Dr. Robbins was entitled to summary judgment as a matter of law because the undisputed evidence showed that he had exercised his professional judgment according to the generally accepted standards of the medical community." *Jensen v. Lane Cnty.*, 312 F.3d 1145, 1148 (9th Cir. 2002) ("*Jensen II*").

violating a plaintiff's rights, the joint action may show a sufficiently close nexus between the state and the private actor to warrant the court treating the private action as state action. *Id*. at 575. No plausible allegations of joint action as to any federal violation are alleged.

While Defendant Gooding County Sheriff Shaun Gough may be a state actor, Plaintiff has not stated a set of factual circumstances showing that Benoit Law acted jointly with Gough or the Judge to violate her constitutional or federal statutory rights.

### 3. North Canyon Hospital

There is nothing in the record showing that North Canyon Medical Center is a state actor. There is nothing showing that North Canyon jointly acted with a state actor to show liability under § 1983 is plausible.

Further, to bring a § 1983 claim against a municipality or private entity, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains. *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978); *Tsao v. Desert Palace*, 698 F3d 1128 (9th Cir. 2012) (*Monell* applied to private entities engaged in state functions). That is, "a municipality [or entity] can be found liable under § 1983 only where the municipality [or entity] itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Under *Monell*, requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional

**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 8**

right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

Plaintiff may file an amended complaint if she has additional facts to support a policy-based civil rights claim against the local hospital.

### 4. Sheriff Shaun Gough

Plaintiff has stated insufficient factual allegations to show that Sheriff Gough had personal participation in the service of the guardianship order. There is also insufficient information showing that the guardianship papers were "faulty" and that Gough knew they should not have been served. Plaintiff's allegations about the history of Gough harming her, her father, and stealing their money, without any dates or other supporting facts, are too vague to relate to the guardianship action.

Plaintiff may file an amended complaint if she has additional facts to support a civil rights claim against Sheriff Gough.

### 5. Judge Robinson and Gooding County Courts

Under the doctrine of absolute judicial immunity, a judge is not liable for monetary damages for acts performed in the exercise of his judicial functions. *Stump v. Sparkman*, 435 U.S. 349 (1978). To determine whether an act is judicial in nature so that immunity would apply, a court looks to "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* at 362.

**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 9**

Once it is determined that a judge was acting in his or her judicial capacity, absolute immunity applies, "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (internal citations omitted). For example, judicial immunity is not lost "by allegations that a judge conspired with one party to rule against another party: 'a conspiracy between judge and [a party] to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges. . . .'" *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) (quoting *Ashelman*, 793 F.2d at 1078).

In addition, "judicial immunity is not overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Absolute immunity for judicial officers "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988).

There are two circumstances in which absolute judicial immunity does not apply. First, a judge may not rely on immunity when he or she performs an act that is not "judicial" in nature. *Stump*, 435 U.S. at 360. For example, when a judge used physical force to evict a person from the courtroom, the Ninth Circuit held that the judge performed a nonjudicial act not covered by absolute immunity. *Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974). On the other hand, when a judge ordered officers "to forcibly and with excessive force seize and bring plaintiff into his courtroom," judicial immunity applied, because a "judge's direction to court officers to bring a person who is

**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 10**

in the courthouse before him is a function normally performed by a judge." *Mireles*, 502 U.S. at 12.

Second, absolute immunity does not apply when a judge acts "in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356 (internal citations omitted). When immunity is at issue, the scope of a judge's jurisdiction "must be construed broadly…. A judge will not be deprived of immunity because the action he *took was in error, was done maliciously, or was in excess of his authority." Id.* at 356.

The question of whether a judge acted in excess of his authority in making a judicial ruling is a distinct issue from the question of whether a judge acted in the clear absence of jurisdiction. Even if a judge exceeds his authority in making a judicial ruling in a particular case, that judge is immune if the case is properly before him. *Mireles*, 502 U.S. at 13.

The difference between acting in the absence of jurisdiction and acting in excess of authority is made clear in the following example: "if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." *Stump,* 435 U.S. at 357.

In Idaho, the state district courts have original jurisdiction over all cases and proceedings in law and in equity. I.C. § 1-705; Idaho Const. art. V, § 20. The jurisdiction of magistrate judges is "established by legislation, I.C. §§ 1-2208, 1-2210; under the

**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 11**

Idaho Constitution, ID. Const. art. 5, § 2; by rule of the Idaho Supreme Court, I.R.C.P. 82; and by the rules of the respective district courts, e.g., 4th Judicial District Court Rule 3.0 (1979)." *Marks v. Vehlow*, 105 Idaho 560, 564, 671 P.2d 473, 476 (Idaho 1983).

Magistrate judges are authorized to hear guardianship-of-incapacitated-persons proceedings. *Matter of Guardianship of Cole*, 2019 WL 2152882 (Idaho Ct. App. 2019) (unpubl.). Magistrates have jurisdiction over the probate of wills and the administration of estates of decedents, minors and incompetents. I.C. § 1-2208(2).

Here, Plaintiff complains of acts and decisions Magistrate Judge Robinson made in the course of presiding over Plaintiff's civil commitment action. Nothing appears to have been beyond the judge's jurisdiction. Rather, everything complained of was performed in the exercise of the judge's judicial functions as a state court judge. Therefore, Judge Robinson's actions and decisions are covered by absolute judicial immunity; he cannot be sued in a civil rights action for violating Plaintiff's due process rights. All claims against Judge Robinson will be dismissed with prejudice, and these claims should not be reasserted in any amended complaint.

As to Defendant "Gooding County Courts," the subject of the Supplement, Plaintiff has not set forth any particular allegations showing how the Court violated Plaintiff's rights. Dkt. 7. Judges of Gooding County would be protected by absolute judicial immunity for acts taking during Plaintiff's proceedings. *Garcia v. Colorado State Bd. of L. Examiners*, 760 F.2d 239, 240 (10th Cir. 1985) (relying on *Harlow v. Fitzgerald,* 457 U.S. 800 (1982), to conclude that state supreme court justices were entitled to judicial immunity); *Pierson v. Ray*, 386 U.S. 547 (1967) (judges defending

**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 12**

against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities).

Plaintiff will be given leave to provide additional allegations showing that other Gooding County employees personally participated in violating his rights and committed acts not covered by quasi-judicial immunity. For example, "[c]ourt clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process." *Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987). The Gooding County judges should not be included in an amended complaint.

### 6. Potential Diversity Jurisdiction

Under the diversity statute, 28 U.S.C. § 1332, the federal court may hear state law claims in very limited circumstances. Parties must be citizens of different states (meaning that every plaintiff and defendant must be from a different state), and the amount in controversy must be over $75,000.00. From the limited facts provided, the Court concludes that Defendants appear to be residents of Idaho, like Plaintiff. Therefore, on the facts asserted, this case does not qualify for diversity jurisdiction in federal court.

### 7. Conclusion

Plaintiff cannot proceed on her Amended Complaint. The Court will permit Plaintiff to file one complete, *legible* Second Amended Complaint to remedy the deficiencies and address the issues set forth above. The amended complaint must be intended to replace all

current complaints and supplements. Judge Robinson or any other judge should not be included in any amended complaint.

## ORDER

IT IS ORDERED:

1. Within **21 days** after entry of this Order, Plaintiff must file a second amended complaint to remedy the deficiencies and address the issues set forth above. Failure to do so will result in dismissal of this case without prejudice without further notice.

2. Within **21 days** after entry of this Order, Plaintiff must either file an application to proceed in forma pauperis or pay the $405 filing fee to the Clerk of Court. Failure to take financial responsibility for this case, regardless of any other action Plaintiff takes in this case, will result in dismissal without prejudice without further notice.

3. The Clerk of Court will provide Plaintiff with a copy of an in forma pauperis application with her copy of this Order.



DATED: February 3, 2025

_____
B. Lynn Winmill
U.S. District Court Judge